IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LESLIE STRONG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-00568-N |
| | § | |
| BANK OF AMERICA, N.A., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses defendants Bank of America, N.A.'s ("BANA") and Bank of America Corporation's ("BAC") motion to dismiss [28] and plaintiff Leslie Strong's motion for jurisdictional discovery [9]. Because Strong has not shown that BAC is subject to personal jurisdiction in this case, the Court dismisses all claims against BAC without prejudice and denies Strong's motion for jurisdictional discovery. Then, because Strong fails to state a claim against BANA, the Court dismisses all claims against BANA with prejudice.

## I. ORIGINS OF THE DISPUTE

This is a discrimination case. Plaintiff Leslie Strong, a black woman, brings claims for race discrimination in violation of 42 U.S.C. § 1981, false imprisonment, and intentional infliction of emotional distress ("IIED") against defendants BAC and BANA. Pl.'s Second Am. Compl. ¶¶ 26–38 [26]. Strong's claims stem from two incidents at Bank of America financial centers. On April 5, 2022, Strong visited a Bank of America location seeking a $27,000 cashier's check. *Id.* ¶¶ 11–12. She alleges the teller refused her request

MEMORANDUM OPINION AND ORDER – PAGE 1

and instructed her to return the following day. *Id.* ¶ 12. From this incident, Strong "felt belittled and knew the employees had racially profiled her." *Id.* The next day, she visited a different Bank of America branch and again requested a $27,000 cashier's check. *Id.* ¶ 13. In response, the teller again refused to issue a check, and instead notified a supervisor. *Id.* The supervisor then questioned Strong about the source of the funds. *Id.* ¶ 14. Strong refused to answer the questions "since she knew the supervisor was racially profiling her." *Id.* Then, another supervisor questioned Strong, confirmed her identity, but still refused to give her the cashier's check. *Id.* ¶ 15. When Strong pressed the second supervisor on why her transaction was being declined, he called the police. *Id.* ¶ 16.

Both defendants now move to dismiss Strong's Second Amended Complaint. BAC argues it is not subject to personal jurisdiction in Texas. Defs.' Br. 6 [29]. And BANA argues that Strong has failed to state a claim as to all three of her claims. *Id.* at 7–17.

## II. LEGAL STANDARDS

### A. Personal Jurisdiction Standard

A nonresident defendant is subject to the personal jurisdiction of a federal court if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant and (2) the exercise of personal jurisdiction by the forum state is consistent with due process under the United States Constitution. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The Texas long-arm statute confers jurisdiction to the limits of the Constitution. *See id.*; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). "Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of Constitutional

MEMORANDUM OPINION AND ORDER – PAGE 2

constraints on Due Process." *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); *see Gessmann v. Stephens*, 51 S.W.3d 329, 335 (Tex. App. – Tyler 2001, no pet.).

The Due Process Clause of the Fourteenth Amendment limits the reach of a state court's — and thus a federal court's — jurisdiction over a nonresident defendant. *See Shaffer v. Heitner*, 433 U.S. 186, 207 (1977). Specifically, due process requires that two elements be satisfied. First, the nonresident must have purposefully established "minimum contacts" in the forum state such that he should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Second, the exercise of personal jurisdiction must "comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). The minimum contacts analysis required by due process ensures that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Id.* at 472.

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction exists if (1) the cause of action is related to, or arises from, the defendant's contacts with the forum, and (2) those contacts meet the due process standard. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). General jurisdiction, on the other hand, exists where the claim is unrelated to the nonresident's contacts with the forum, but where those contacts are "so 'continuous and systematic' as to render [the nonresident] essentially at home" in the forum state.

MEMORANDUM OPINION AND ORDER – PAGE 3

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317).  Under either a general or specific jurisdiction analysis, however, the "constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (quoting *Burger King*, 471 U.S. at 474).

A court must consider the totality of the circumstances of a case when making the purposeful availment inquiry, as "no single factor, particularly the number of contacts, is determinative." *Id.* at 1192.  Whether "the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982).

Strong, as the party seeking to invoke the Court's power, bears the burden of establishing the Court's jurisdiction over a foreign defendant. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012) (collecting cases).  If a district court, as here, decides a motion to dismiss without holding an evidentiary hearing, a prima facie case suffices to establish jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).  A court must take uncontroverted allegations in the complaint as true, and it must resolve all factual conflicts in favor of the plaintiff. *Pervasive Software*, 688 F.3d at 219–20 (citing *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)).  In deciding the motion, a court may consider "affidavits, interrogatories, depositions, oral

MEMORANDUM OPINION AND ORDER – PAGE 4

testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (quoting *Thompson*, 755 F.2d at 1165). "But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

### B. Rule 12(b)(6) Standard

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

MEMORANDUM OPINION AND ORDER – PAGE 5

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, a "court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). Second, a "written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, in "deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that the "district court took appropriate judicial notice of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand").

### III. THE COURT GRANTS BAC'S MOTION TO DISMISS
### FOR LACK OF PERSONAL JURISDICTION

As an initial matter, the Court concludes that BAC is not subject to general jurisdiction in Texas. A corporation is typically subject to general jurisdiction in "two paradigmatic places: (1) the state of incorporation and (2) the state where it has its principal place of business." *Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020). BAC is a Delaware corporation with its principal place of business in North Carolina. *See* Pl.'s Second Am. Compl. ¶ 2; Defs.' Br. 4 [29]. And there is nothing in the record demonstrating BAC otherwise has contacts with Texas that are "so 'continuous and systematic' as to render [it] essentially at home" in Texas.[1] *See Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 317); *see also Hughes v. Bank of Am. Corp.*, 2022 WL 179600, at *2 (N.D. Tex. 2022) (finding no general jurisdiction over BAC in Texas).

Thus, the court can exercise personal jurisdiction over BAC only if Strong demonstrates the requirements for specific jurisdiction are satisfied. The Fifth Circuit has articulated a three-step test for specific jurisdiction analysis:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the

---

[1] Strong asserts that BAC co-owns "over 100 foreclosed Texas properties" and therefore is subject to general personal jurisdiction in Texas. Pl.'s Resp. 12–13 [31]. The Court disagrees. Merely owning property in a state is a far cry from being essentially at home there. And Strong's source for this information (a pleading in a separate case) indicates BAC owns similar, or greater, numbers of properties in multiple other states. *See id.* at 12. Alone, this practice of owning property across multiple states does not subject BAC to general personal jurisdiction in all of those states. *Cf. Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (stating it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." (citing *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014))).

privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). Strong bears the burden to establish the first two prongs, after which the burden shifts to Defendants to establish the third. *Id.*

Here, Strong fails to establish that her cause of action arises out of or results from BAC's contacts with Texas. Strong's claims stem from two encounters she had at two different Bank of America financial centers. Pl.'s Second Am. Compl. ¶ 8. She specifically claims that the actions of some employees at these financial centers were discriminatory and tortious. *Id.* ¶¶ 26–38. But nothing in Strong's complaint or response links this conduct to defendant BAC's contacts with Texas.

Both parties agree that BAC is a holding company and is at some level a parent company of defendant BANA. *See* Def.'s Br. 5; Pl.'s Resp. 13 [31]; Pl.'s Second Am. Compl. ¶ 2. BAC asserts, and Strong does not dispute, that BAC does not operate any bank branches and does not maintain any consumer or business accounts. *See* Defs.' Br. Ex. 1 ¶ 3 [29-1]. And Strong makes no particularized allegations in the complaint against BAC specifically. Thus, Strong's claims do not arise from any contacts BAC may have with Texas; its status as the ultimate parent of BANA is not itself a contact with Texas from which specific jurisdiction flows. Strong's only attempt to connect BAC's contacts with Texas to her claims is through her assertion that BAC controls its branch banks, and the

MEMORANDUM OPINION AND ORDER – PAGE 8

claim arises from conduct at a branch bank.  However, she offers no facts explaining how BAC asserts control over BANA's branch banks from which the Court could find specific personal jurisdiction.  Thus, the Court holds it does not have personal jurisdiction over defendant BAC.  Accordingly, the Court grants BAC's motion to dismiss for lack of personal jurisdiction and dismisses all claims against BAC without prejudice.[2]

### IV.  THE COURT DENIES STRONG'S MOTION FOR JURISDICTIONAL DISCOVERY

A district court has broad discretion in discovery matters at every stage of litigation. *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982).  "The scope of permissible discovery is limited by the requirement of relevance . . . ."  *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982).  "It is not error to deny discovery when there is no issue of material fact."  *Id.* In the context of a motion for jurisdictional discovery, if the plaintiff fails to make even a preliminary showing of jurisdiction, district courts need not permit discovery.  *See Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 620 (N.D. Tex. 2014) (collecting cases).

Here, the Court concludes that jurisdictional discovery would be futile.  Strong specifically requests the Court authorize "document production surrounding BANA and BAC's contacts with Texas."  Pl.'s Br. Supp. Mot. Jurisdictional Disc. 2 [10].  However, to be entitled to such discovery, Strong must have already made a preliminary showing of jurisdiction.  Here, the only contacts between BAC and Texas that Strong has identified

---

[2] BAC also moves to dismiss all claims against it for failure to state a claim. Defs.' Br. 6. Having found that BAC is not subject to personal jurisdiction here, the Court does not reach BAC's arguments under Rule 12(b)(6).

MEMORANDUM OPINION AND ORDER – PAGE 9

are those related to ownership of foreclosed properties (and an unsupported, conclusory assertion that BAC "controls" BANA's branch banks). As discussed above, these contacts fall short of even a preliminary showing of either general or specific personal jurisdiction. Accordingly, the Court declines to permit Strong to "conduct a jurisdictional fishing expedition seeking facts to support a claim of general jurisdiction." *Bell Helicopter Textron Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789, 798 (N.D. Tex. 2010) (citing *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1023 (Fed. Cir. 2009)). The Court therefore denies Strong's motion for jurisdictional discovery.

## V. THE COURT GRANTS BANA'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Strong asserts three claims for relief: (1) race discrimination under 42 U.S.C. § 1981, (2) false imprisonment, and (3) IIED. Pl.'s Second Am. Compl. ¶¶ 26–38. Because Strong has failed to plead sufficient plausible facts to support any of these claims, the Court grants BANA's motion to dismiss all claims.

### A. Section 1981 Race Discrimination

Strong alleges that BANA engaged in race discrimination after bank employees refused to honor her request for a $27,000 cashier's check on two occasions. *See* Pl.'s Second Am. Compl. ¶ 30. Because Strong fails to plausibly allege the employees had the requisite intent to discriminate, the Court dismisses her section 1981 claim.

Section 1981 provides that all "persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). "Make and enforce contracts" is defined as "the making, performance,

modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).  To establish a section 1981 claim for contractual discrimination, Strong must allege that (1) she is a member of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute.  *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017).  The analysis of discrimination claims under section 1981 is identical to the analysis of Title VII claims. *Id.*

Race discrimination can be demonstrated in two ways: by disparate treatment or disparate impact.  *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006).  "Disparate treatment describes actions that treat a plaintiff worse than others based on his race, color, religion, sex, or national origin."  *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1013 (5th Cir. 2023) (cleaned up).  Here, Strong's complaint is best read as alleging disparate treatment.  *See* Pl.'s Second Am. Compl. ¶ 10 (alleging defendants engaged in "blatant racial discrimination, also commonly known as 'banking while black'"); ¶ 31 ("Bank of America's racially discriminatory conduct toward Ms. Strong was intentional and malicious.").

"The simple test for determining whether disparate treatment has occurred is 'whether the evidence shows treatment of a person in a manner which but-for that person's protected characteristic would be different.'"  *Abdallah*, 83 F.4th at 1014 (cleaned up) (quoting *City of L.A., Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711 (1978)).  Naked allegations of discriminatory intent will not survive a motion to dismiss.  *Body by*

MEMORANDUM OPINION AND ORDER – PAGE 11

*Cook*, 869 F.3d at 386. But an "allegation that similarly situated non-minorities received better treatment 'could create the necessary inference and set the predicate for establishing the section 1981 claim.'" *Id.* (quoting *Crosby v. Kilgore*, 1993 WL 481800, at *1 (5th Cir. 1993)).

Here, Strong fails to allege either that any similarly situated nonminority received better treatment or that but-for her race she would have been treated differently. Strong alleges BANA discriminated against her when its employees twice refused to issue a $27,000 cashier's check, questioned her about the source of the funds, and ultimately called the police. Pl.'s Second Am. Compl. ¶¶ 12–16. In support of the discriminatory intent element, Strong asserts that she "knew the employees had racially profiled her." *Id.* ¶ 12. However, this is a textbook "naked allegation" of discriminatory intent and is not sufficient to survive a motion to dismiss.

Strong also asserts that her transaction was ultimately approved when she sought a wire transfer instead of a cashier's check because with a wire transfer, she did not need to enter a branch bank and therefore no employees could see her race. Pl.'s Second Am. Compl. ¶ 18; Pl.'s Resp. 26. However, this assertion also fails to show discriminatory intent. Strong never asserts that any specific nonminority person received better treatment than she did when she sought her cashier's check. Neither does she plead that a bank employee mentioned her race. And she also fails to make a logical connection between the denial of a cashier's check and the successful wire transfer. To find discriminatory intent there, she must make the unsupported assumption that the anti-fraud procedures for wire

MEMORANDUM OPINION AND ORDER – PAGE 12

transfers are identical to those for cashier's checks. [3]  In sum, Strong provides no factual assertions from which to infer BANA, or its employees, acted with discriminatory intent or subjected her to disparate treatment.[4]  Accordingly, the Court grants BANA's motion to dismiss as to Strong's section 1981 claim and dismisses it with prejudice.

### B. False Imprisonment

Under Texas law, a claim for false imprisonment requires (1) willful detention, (2) without consent, and (3) without authority of law.  *Loya v. Hickory Trail Hosp., L.P.*, 673 S.W.3d 1, 12 (Tex. App. – Dallas 2022, no pet.) (citing *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995)).  The first element can be satisfied by "conduct that is intended to cause one to be detained, and in fact causes the detention, even when the actor does not participate in the detention."  *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 507 (Tex. 2002).  However, there is a "clear legal right to report criminal misconduct to authorities" in Texas.  *Id.*  When a false imprisonment claim rests on an alleged unlawful arrest, the claim fails as long as the defendant "leaves to the police the decision as to what shall be done about any arrest."  *Id.* at 508.

Here, Strong alleges that she was falsely imprisoned after a BANA employee "willfully caused the police officer to detain Ms. Strong unlawfully."  Pl.'s Second Am.

---

[3]  Also, Strong reduced the amount of the request to $20,000 from the original $27,000 when seeking the wire transfer.  Pl.'s Second Am. Compl. ¶ 18.

[4]  Strong also attempts to bolster her claim by referencing other people who have "sued Bank of America for racial discrimination."  Pl.'s Second Am. Compl. ¶ 20.  These references to other incidents involving other customers and other employees do not amount to plausible allegations that Bank of America had intent to discriminate against Strong in this case.

Compl. ¶ 37.  However, this allegation is insufficient to survive a motion to dismiss.  First, Strong alleges no plausible facts to support the willful detention element of a false imprisonment claim.  Indeed, her complaint is utterly devoid of factual assertions regarding her interactions with the police.  She makes only two allegations, both conclusory, to support a claim of false imprisonment.  *See id.* ¶ 16 ("When she asked why he refused to honor her withdrawal request, although she had verified her identity, he called the police."); *id.* ¶ 37 ("Bank of America willfully caused the police officer to detain Ms. Strong unlawfully.").  Thus, even without considering the police-action context of her claim, these allegations are too conclusory to survive a motion to dismiss.  Then, Strong also failed to allege any facts supporting an inference that the police were carrying out BANA's request instead of deciding for themselves whether to detain Strong.  In this context, Strong would have to allege the police officer detained her "not of his or her own volition, but to carry out the request of the defendant."  *Wal-Mart*, 92 S.W.3d at 507.  She alleges no such facts.  Thus, because Strong alleges no plausible facts to support a false imprisonment claim, the Court grants BANA's motion and dismisses this claim with prejudice.

### C. Intentional Infliction of Emotional Distress

Under Texas law, a claim for intentional infliction of emotional distress requires (1) that the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe.  *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006).  The second element is satisfied only if the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and

MEMORANDUM OPINION AND ORDER – PAGE 14

to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). Mere "insults, indignities, threats . . . , or other trivialities" are not extreme and outrageous. *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999). "Meritorious claims for intentional infliction of emotional distress are relatively rare precisely because most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous." *Kroger Tex.*, 216 S.W.3d at 796.

IIED is a gap-filler tort in Texas. This means that "where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (noting that IIED was "never intended to supplant or duplicate existing statutory or common-law remedies"). Thus, where the facts that form the basis of one claim are also asserted as the basis for an IIED claim, the IIED claim fails because there is no need for a gap filler. *Young v. Krantz*, 434 S.W.3d 335, 344 (Tex. App. – Dallas 2014, no pet.), *overruled on other grounds by In re Lipsky*, 460 S.W.3d 579, 587–88 (Tex. 2015).

Here, Strong fails to allege any extreme or outrageous conduct. Strong alleges that the branch manager's act of calling the police caused her severe emotional distress "given the numerous highly publicized instances of police officers killing innocent unarmed African Americans." Pl.'s Second Am. Compl. ¶ 34. However, the act of reporting suspected criminal activity to the police is not extreme and outrageous conduct in Texas. *Walgreens v. McKenzie*, 676 S.W.3d 170, 178–79 (Tex. App. – Houston [14th Dist.] 2023,

MEMORANDUM OPINION AND ORDER – PAGE 15

pet. pending).  "Other instances that do not rise to the level of extreme and outrageous conduct include questioning a suspected thief, falsely depicting someone as a thief in the community, and identifying a suspected accomplice to police for shoplifting without first reviewing video security footage."  *Id.* at 179 (citations omitted) (collecting cases).  Accordingly, the conduct of BANA's employees related to calling the police on Strong is not extreme and outrageous.

Strong also fails to assert any facts unrelated to her other claims that could support an independent IIED claim here.  She asserts the same facts about calling the police as the part of her section 1981 claim and her false imprisonment claim – evincing the lack of need for a gap filler.  *See Young*, 434 S.W.3d at 344.  Thus, because the alleged conduct is not extreme and outrageous and because an IIED claim is not available on these alleged facts, the Court grants BANA's motion and dismisses Strong's IIED claim with prejudice.

## CONCLUSION

Because Strong fails to show that defendant BAC is subject to personal jurisdiction in Texas, the Court grants BAC's motion and dismisses all claims against it without prejudice.  Then, because Strong fails to allege plausible facts in support of her section 1981, IIED, and false imprisonment claims, the Court grants BANA's motion and dismisses these claims with prejudice.[5]

---

[5] Strong has not moved for leave to amend her complaint in response to this motion to dismiss.  And Strong has already amended her complaint twice, both in response to previous motions to dismiss.  Accordingly, the Court declines to grant leave to amend at this juncture.

MEMORANDUM OPINION AND ORDER – PAGE 16

Signed December 17, 2024.

David C. Godbey
Chief United States District Judge